# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| MARSHA MEEKER, | : | |
| | : | Case No. 1:04cv1318 |
| Plaintiff, | : | |
| | : | |
| | : | JUDGE KATHLEEN O'MALLEY |
| | : | |
| v. | : | |
| | : | |
| ROBERT J. VITT, et al., | : | **MEMORANDUM AND OPINION** |
| | : | |
| Defendants. | : | |

Plaintiff Marsha Meeker ("Meeker" or "Plaintiff") brought suit against Defendants Robert Vitt ("Vitt") and Greenwood Trading Corporation ("Greenwood") (collectively, "Defendants"). Meeker alleges various violations of the Fair Housing Act, 42 U.S.C. § 3605 *et seq.*, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and state law. She originally filed this action in the Geauga County Common Pleas Court, and Defendants removed to this Court. Jurisdiction exists under 28 U.S.C. § 1331 and § 1367.

Pending are Defendants' *Motion for Summary Judgment* on all claims (Doc. #28), Defendants' *Motion to Strike Plaintiff's Exhibit B, Exhibit 1 to Plaintiff's Affidavit and Related Portions of Plaintiff's Brief* (Doc. #35) ("Motion to Strike Plaintiff's Exhibit B"), and Defendants'

*Motion to Strike Exhibit C and Related Portions of Plaintiff's Brief* (Doc. #36) ("Motion to Strike Plaintiff's Exhibit C"). For the reasons outlined below, the Court:

1. **GRANTS in part** Defendants' Motion for Summary Judgment with regard to Plaintiff's federal claims, and **DENIES in part** the motion with respect to all other claims;

2. **DENIES** Defendants' Motion to Strike Plaintiff's Exhibit B;

3. **DENIES** Defendants' Motion to Strike Plaintiff's Exhibit C; and

4. **REMANDS** Plaintiff's state law claims, the only claims that remain, to the Geauga County Common Pleas Court.

**I.    BACKGROUND**

Vitt is the president of Greenwood, a real estate development and construction firm. Meeker worked for Greenwood from June, 1996, until April, 1997, and from June, 2001, until January 11, 2002.

Meeker and Vitt have a long history. They had a personal relationship in addition to their working relationship. Both admit they were friends. Their personal relationship started in 1988, when Meeker and Vitt were neighbors. They spent holidays together and dined together. In December, 1992, Vitt asked Meeker to marry him, she accepted, and the two announced their engagement to family and friends. Two weeks later Meeker and Vitt mutually agreed to end their engagement.[1]

In 1996, Meeker started working for Greenwood. Vitt was Meeker's supervisor at Greenwood. During this time, Vitt started building a house on Bartholomew Road in Auburn, Ohio

---

[1] In fact, Vitt asked Meeker to marry him several times before and after their failed engagement. The parties dispute the exact number of times Vitt proposed, but Meeker only accepted Vitt's marriage proposal once. Vitt admits he had romantic feelings towards Meeker. The two had consensual sexual relations at least once.

that he apparently agreed to build for Meeker. Meeker, however, had not purchased the property when construction began. She alleges that while working at Greenwood, Vitt asked her to marry him again. She further contends that, after she declined the marriage proposal, Vitt raised the price of the house. In April, 1997, Meeker quit her job at Greenwood.

In 1998, Meeker leased the Bartholomew Road house from Vitt. Later that year, Meeker and Vitt entered into the first of several land installment contracts and purchase option agreements ("Land Purchase Agreements") to enable Meeker to buy the house.

During the summer of 1999, Meeker and Vitt traveled together to: Telluride, Colorado; Nemacolin, Pennsylvania; and Naples, Florida. Meeker did not work for Greenwood at this time. The parties dispute whether the purpose of these trips was business or pleasure. Meeker asserts she accompanied Vitt to do marketing research on spa resorts for Vitt. During the Nemacolin trip, Meeker alleges that Vitt touched her breast against her will. Vitt contends the two were romantically involved during this time.

Later that year and into 2000, Meeker failed to make the required payments under her lease and purchase agreement. Consequently, Vitt obtained a judgment against her for restitution of the premises in May, 2000. A few months later, however, Vitt agreed to allow Meeker to remain on the property until January, 2002, provided she pay rent.

In June, 2001, with the intention of repaying her debt to Vitt, Meeker asked Vitt for a job at Greenwood. Vitt agreed to employ Meeker as a sales agent at Greenwood. Meeker was the only person with this job at Greenwood. It is during this time period that she alleges Vitt sexually

harassed her.[2] According to Meeker, Vitt required her to be on "24-hour call." He allegedly required her to receive her paycheck directly from him and was periodically rude to her.

In November, 2001, Vitt told Meeker he would terminate her in January, 2002. According to Meeker, Vitt said he needed to terminate her because "he needed to take care of himself, and that the best thing to do was for him to get on with his life and not have any, that it would be best if he didn't see me [Meeker] at work." (Meeker Dep. May 18, 2004 at 95.) Vitt says he allowed Meeker to work until January, so she could pay her bills through the holidays. Meeker alleges that, at some point between November and January, Vitt told her she could have kept her job, but she did not ask him what he meant.

Meeker admits Vitt never directly or indirectly asked her to have sex while she worked for Greenwood. She testified the alleged discrimination did not prevent her from doing her job, but made her miserable.

On January 11, 2002, Vitt and Meeker argued at work, and the putative termination discussed in November, 2001, was effectuated. Meeker later filed a claim with the OCRC and EEOC alleging sexual harassment against Vitt and Greenwood.

In January, 2002, the parties signed a new lease agreement and an option to purchase the Bartholomew Road house. Meeker and Vitt's landlord-lessee relationship ended in February, 2003,

---

[2] While not mentioned in her response to the Defendants' Motion for Summary Judgment, Meeker testifies to incidents in which Vitt allegedly made sexual comments to her. First, Meeker stated that Vitt told her in July, 2001, "You're, you look like you're losing weight, but not in your breasts." (Meeker Dep. May 18, 2004 at 81.) Second, Meeker testified that in December, 2001, while she was bending down, Vitt stated "I feel like I should put, or when I walk by you, I feel like there should be an X on your –." (Meeker Dep. May 18, 2004 at 79.)

when Vitt evicted Meeker because of unpaid rent.

I.     ANALYSIS

   A.     **Standard of Review**

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *Curry v. Scott*, 249 F.3d 493, 505-06 (6th Cir. 2001). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient to create a genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

**B.     Discussion**

   **1.     Motion to Strike Plaintiff's Exhibit B**

Defendants argue that Plaintiff's Exhibit B – a transcript of a recorded conversation between Meeker and Vitt – is inadmissible for three reasons: (1) Rule 106 bars the admission of this evidence because the transcript is incomplete; (2) Rule 403 bars the admission because the transcript's form creates unfair prejudice; and (3) Rule 801 bars the admission of this evidence because it is hearsay. Fed. R. Evid. 106, 403, 801.

Rule 106 is commonly known as the rule of completeness. It provides: "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." Fed. R. Evid. 106. Defendants assert that they have the right to demand introduction of the transcript as a whole, which Meeker concedes does not exist and cannot be recreated.

Rule 403 requires the Court to weigh the probative value of evidence proffered against its prejudicial effect and to exclude evidence where the latter substantively outweighs the former. Defendants contend that use of the transcript is unduly prejudicial because its accuracy cannot be tested.

While these arguments against the use of the transcript would have merit if asserted as a motion in limine prior to trial, they are not well-taken when raised in the summary judgment context. Although a party "may resist a summary judgment motion by presenting evidence not in an admissible form, such as an affidavit, the evidence itself still must be admissible." *N. Am. Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1283 (6th Cir. 1997). Here, even if the transcript were not

6

admissible, the statements contained in it are and could be proffered through Plaintiffs' testimony.

Vitt's statements contained within the transcript are admissions by a party opponent and, therefore, not hearsay by definition. Fed. R. Evid. 801(d)(2). Thus, Defendants' reliance on Rule 106 to bar admission of Vitt's statements contained within the transcript is misplaced because such statements would be admissible regardless of whether the transcript is admitted. Additionally, Defendants' Rule 403 argument relates to the prejudice an incomplete transcript may cause, and therefore, does not bar the admissibility of the statements themselves.

In addition, Meeker's statements contained within the transcript are also not hearsay because her statements are offered not for the truth, but to provide context to Vitt's statements. *See U.S. v. Gallagher*, 2003 WL 179994, *5 (6th Cir. Jan. 24, 2003) (unpublished disposition) ("Portions of a statement admitted under Rule 106, the rule of completeness, do not impact on the hearsay rule, because in effect, they are not offered for the truth. Their purpose in being offered is to put statements already admitted into the proper context. So, the hearsay rule is not implicated by the use of [Rule] 106.").

For these reasons, the Court finds that Meeker may rely on the discussion disclosed in the transcript even if the transcript itself were not admissible in the proffered form. Accordingly, Defendants' Motion to Strike Plaintiff's Exhibit B is denied.

### 2. Motion to Strike Plaintiff's Exhibit C

Defendants argue Plaintiff's Exhibit C is inadmissible because it has no probative value and a high danger of creating prejudice and confusion. Exhibit C is comprised of probable cause letters from the Ohio Civil Rights Commission (OCRC).

Meeker argues Exhibit C has high probative value because it helps establish one component

of a *prima facie* case for her Title VII claims, specifically that Greenwood employed fifteen or more employees. Meeker also argues that OCRC's probable cause determination supports her Title VII claims.

A court has discretion whether to admit an EEOC or OCRC probable cause determination. *Williams v. Nashville Network*, 132 F.3d 1123, 1129 (6th Cir. 1997); *see E.E.O.C. v. Ford Motor Co.*, 1996 WL 557800, *12 (6th Cir. Sept. 30, 1996) (unpublished disposition) ("a district court does not err as a matter of law by categorically refusing to admit EEOC cause determinations"). Under Title VII, it is the jury (or court) which is the fact-finder, not the EEOC or OCRC. A probable cause determination letter by an administrative agency has little, if any, probative value. The OCRC's determination that Meeker had probable cause to bring a Title VII sex discrimination claim does not prove a *prima facie* case exists on summary judgment. *See Williams*, 132 F.3d at 1129. However, because Meeker relies on Exhibit C as evidence Greenwood employed fifteen or more employee, the Court will allow reference to Exhibit C for that purpose. At this stage of the proceedings, the Court gives the probable cause determination only that minimal weight it deserves. Therefore, Defendants' Motion to Strike Plaintiff's Exhibit C from this stage of the proceeding is denied.

### 3. Motion for Summary Judgment

#### a. Federal Fair Housing Claim

Meeker alleges Vitt violated the Fair Housing Act (FHA) by discriminating against her on the basis of sex and familial status when she entered into the Land Purchase Agreements with him.

The FHA prohibits a person engaged in "residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national

8

origin." 42 U.S.C. § 3605(a). The FHA has a two-year statute of limitations, which is triggered "after the occurrence or the termination of an alleged discriminatory housing practice . . . whichever occurs last." 42 U.S.C. § 3613(a)(1)(A).

On summary judgment, Defendants argue Meeker's FHA claim is time-barred. Defendants contend Meeker has not alleged discrimination that occurred after February 6, 2001 – within the allowed time period. They assert Meeker's alleged claims occurred between 1997 and 2000, which is outside the statute of limitations period.

In response, Meeker contends the alleged discrimination was a continuing violation that did not end until 2002, and therefore her claims are timely. She alleges Vitt discriminated against her in relation to "the securing of loans . . . in relation to the land purchase agreements for the Bartholomew Road property."

To prove a continuing violation of the FHA, a plaintiff must show either an "over-arching policy of discrimination" or "evidence of present discriminatory activity giving rise to a claim of a continuing violation." *LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1105-06 (6th Cir. 1995) (internal citation omitted). When an opposing party provides a supported motion for summary judgment, the nonmoving party has the affirmative burden to provide admissible evidence in support of her claim. *Street*, 886 F.2d at 1477 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)).

In her response to summary judgment, Meeker fails to provide evidence of a continuing violation or a discriminatory act that occurred within the statute of limitations period. All allegedly relevant events significantly predate 2001. Accordingly, Meeker's FHA claims are time-barred and fail as a matter of law.

9

### b. Employment Discrimination Claim Under Title VII

Meeker also alleges a Title VII sex discrimination claim, U.S.C. § 2000e-2(a)(1), against Greenwood. This claim relates to Meeker's second term of employment with Greenwood - from June 2001 to January 11, 2002.[3]

Title VII prohibits an employer from discriminating against an employee on the basis of sex. 42 U.S.C. § 2000e-2(a)(1). To prove a Title VII discrimination claim, the plaintiff, *inter alia*, must show the defendant employs fifteen or more employees. 42 U.S.C. § 2000e(b); *Arbaugh v. Y & H Corp.*, U.S. , 126 S.Ct. 1235, 1245 (2006).

Defendants contend Greenwood is exempt from Title VII. In support, they provide Vitt's testimony that Greenwood has never employed more than fourteen people.

In response, Meeker provides an OCRC determination letter, Exhibit C, stating Greenwood employed fifteen or more employees during the relevant time period. Therefore, a dispute of material fact exists regarding this issue, and summary judgment may not be granted on the ground that Greenwood is exempt from Title VII as an employer of less than fifteen employees.

Alternatively, Defendants argue Meeker cannot prove either a *quid pro quo* or hostile work environment claim of sex discrimination under Title VII.

The difference between a *quid pro quo* and a hostile work environment sexual harassment claim is essentially a distinction between a case where an employer carries out a threat against an employee for denying "sexual liberties" and a case where such threats "are not [carried out] or are

---

[3] Because of the time period involved, genuine issues surrounding facts that occurred before or after this time period are not relevant to this analysis. For example, whether the trips taken by Meeker and Vitt in 1999 to Colorado, Pennsylvania, and Florida, were for business or for pleasure, and whether Vitt touched Meeker's breast against her will during the Pennsylvania trip, are not genuine issues that can materially affect the outcome of this analysis.

10

absent altogether." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 751 (1998).

The Sixth Circuit makes the distinction by determining whether the alleged harassment is linked to the denial of a tangible employment benefit. *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 461 n.4 (6th Cir. 2000). This distinction is important because it determines whether a plaintiff must prove the alleged harassment was severe and pervasive in order to state a *prima facie* claim. *Burlington Indus., Inc.*, 524 U.S. at 752; *McCormick v. Kmart Distrib. Ctr.*, 163 F. Supp. 2d 807, 828 (2001).

A plaintiff who alleges harassment that resulted in an employer taking action against him or her need not show the alleged harassment was severe and pervasive. On the other hand, "[f]or any sexual harassment preceding the employment decision to be actionable, however, the conduct must be severe or pervasive." *Burlington Indus., Inc.*, 524 U.S. at 754 (emphasis added). A plaintiff must show the alleged harassment was not only subjectively severe and pervasive, but also that a reasonable person would agree. *Bowman*, 220 F.3d at 463.

Meeker's claim of sexual harassment is centered around a tangible employment action - her termination from Greenwood. Thus, she alleges a *quid pro quo* claim.

For an employee to prove a *quid pro quo* claim under Title VII, she must show:

> 1) that the employee was a member of a protected class; 2) that the employee was subjected to unwelcomed sexual harassment in the form of sexual advances or requests for sexual favors; 3) that the harassment complained of was on the basis of sex; 4) that the employee's submission to the unwelcomed advances was an express or implied condition for receiving job benefits or that the employee's refusal to submit to the supervisor's sexual demands resulted in a tangible job detriment; and 5) the existence of respondeat superior liability.

*Id*.

Defendants argue Meeker cannot prove a *prima facie* claim because Vitt did not fire her on

11

the basis of sex.

In response, Meeker contends Vitt's sexual advancements and statement that he fired her because of "personal feelings" demonstrate discrimination on the basis of sex. She further argues that, in any event, the OCRC determined probable cause existed for a harassment claim.

Meeker does not support her allegations of Vitt's sexual advancements in her response to the Defendants' Motion for Summary Judgment. On summary judgment, the non-moving party, not the court, has the burden to demonstrate specific facts exist to support a material element of a claim at issue. *Street*, 886 F.2d at 1479-80 (6th Cir. 1989). Plaintiff fails to provide such facts in her response to summary judgment. Thus, Meeker's blanket assertion that Vitt's sexual advancements show sex discrimination or harassment is not sufficient to demonstrate material facts remain in dispute as to this allegation.

The OCRC's probable cause determination does not prove a *prima facie* case exists on summary judgment. *See Williams*, 132 F.3d at 1129. On summary judgment, Meeker has the burden of demonstrating material facts remain in dispute regarding each of the elements of her claim. *Fulson*, 801 F. Supp. at 4. Meeker cites to no actual acts of harassment in her opposition brief. Scouring her deposition testimony for such evidence, moreover, still lends only the most meager support for such a claim.

The only issue that remains, accordingly, is whether Meeker can show that her termination was based on discrimination as she alleges. To show Vitt discriminated against her on the basis of sex, Meeker offers Vitt's statement: "I'm firing you because I need to have space and distance from you, because I keep getting reconnected ... like last summer and a year and a half ago and May and June." (Pl.'s Resp. Summ. J. at 11.) Additionally, Meeker provides the following excerpt from a

12

conversation between herself and Vitt:

> " M (Meeker): I'm being fired because I won't have a frigging relationship with you. What I'm trying to do is to pay you back in a business sense, and you're going to pull the rug out from under me once again. **B (Vitt): No, get another job. I didn't say this was going to be easier on me from the standpoint of business. I said it was going to be easier on me personally.** M: You can't stand to see me...what ...easier how? **B: It's easier for me to move on...** M: You could have whatever go on if you could understand that we're just friends. **B: No Marsha, I have a counselor and mentor at the church that have said that unanimous... it's the only way to move on..... I need to make this break.** M: If we were dating or something I could understand it...we're not... we haven't and so what is it that we're breaking from here? **B: My emotional attachment to a relationship.** M: So all this time you've been telling me that you just wanted to be a friend...it wasn't right... it wasn't true. **B: When did I tell you that I wanted to be a friend? I haven't told you....I wanted....I assumed we were friends.** M: No. You told me that the only thing you wanted was to be a friend and that you understood that I was not in a position to have a relationship... but now you're telling me that isn't accurate. That time you said that you wanted to be a friend was just hogwash and that in the back of your mind you can't get away from ... as a matter of fact wanted a personal relationship, which is not allowing you to have a personal relationship with anyone else. So that means you don't see me...going...it meant that you can't see me at work...you can get on with things in your own head? **B: UH HUH"**

(Pl.'s Resp. Summ. J. at 11-12 (emphasis supplied to highlight Vitt's statements).)

To prove a *prima facie* sex discrimination claim, a plaintiff must show "the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted '*discrimina[tion]* . . . because of . . . sex.'" *Oncale v. Sundowner Offshore Serv., Inc.*, 523 U.S. 75, 81 (1998) (emphasis in original). This conduct must be motivated by gender animosity. *Bowman*, 220 F.3d at 464. Animosity towards an employee that stems from a "prior failed romantic relationship" or the "desire to rekindle" a past relationship is not discrimination based on sex. *See Mehringer v. Vill. of Bloomingdale*, 2003 WL 21506856 *5 (N.D.Ill. June 27, 2003) (unpublished disposition). Even firing an employee to end a romantic relationship does not demonstrate gender animosity. *See Kahn v. Objective Solutions, Intl.*, 86 F. Supp. 2d 377, 382 (S.D.N.Y. 2000).

Neither party disputes that Meeker and Vitt had a prior relationship.[4] Defendants, however, point out that Meeker herself testified that Vitt did <u>not</u> expect sexual relations as a condition of her employment. Meeker does not dispute this contention on summary judgment.

Viewing the evidence in the light most favorable to her, Meeker has not demonstrated Vitt discriminated against her based on sex. The evidence at best shows that Vitt fired Meeker because he wanted to end their personal relationship. Firing a person to end a personal relationship does not demonstrate discrimination based on sex. Furthermore, the evidence Meeker provided does not show Vitt fired Meeker because she would not engage in a sexual relationship with him.

Even assuming, *arguendo*, Vitt fired Meeker because she would not rekindle their prior relationship, that would not demonstrate Vitt fired Meeker based on her sex, but rather demonstrates animosity from their past failed relationship. *See Succar v. Dade County Sch. Bd*, 60 F. Supp. 2d 1309, 1314 (S.D. Fla. 1999) (animosity stemming from "a classic love affair gone awry" shows harassment not based on sex, but "of responses to an individual because of her former intimate place in [that individual's] life" (citation omitted)). While Meeker and Vitt's past relationship spanning twelve years was hardly a "classic love affair," Meeker has presented no evidence that her sex rather than this strained relationship caused her firing. Thus, Meeker has not presented evidence that a material dispute of fact remains to show Vitt discriminated against her based on her sex.

Therefore, Vitt is entitled to summary judgment on Meeker's claim of sex discrimination under Title VII.

---

[4] Although the parties dispute the number of times Vitt proposed marriage to Meeker, that fact is not <u>material</u> to the outcome of Meeker's claim.

### c. Title VII Retaliation Claim

Meeker claims Defendants retaliated against her, by firing her, and denying her other benefits in violation of Title VII, § 2000e-3(a).

To prove a *prima facie* retaliation case under Title VII, the plaintiff must show:

> 1) he engaged in activity that Title VII prot ects; 2) defendant knew that he engaged in this protected activity; 3) the defendant subsequently took an employment action adverse to the plaintiff; and 4) a causal connection between the protected activity and the adverse employment action exists.

*Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537, 542 (6th Cir. 2003).

Defendants argue Meeker's Title VII retaliation claim fails because Meeker cannot show a causal connection between the alleged retaliation and the alleged protected activity. In particular, Defendants contend the alleged protected activity, Meeker filing a sex discrimination claim with the OCRC, occurred after Defendants fired Meeker, not before. Thus, Defendants argue Meeker cannot prove Vitt fired Meeker because she engaged in protected activity under Title VII.

Meeker presented no evidence she engaged in protected activity before Defendants fired her. Thus, Meeker fails to state a *prima facie* retaliation claim under Title VII, and summary judgment is warranted on this claim.

### d. Remaining State Law Claims

As addressed above, summary judgment is granted on all of Meeker's federal claims. Because the Court dismisses all claims over which it has federal question jurisdiction, the Court declines to exercise supplemental jurisdiction over Meeker's remaining state law claims. 28 U.S.C. § 1367(c)(3).

**III.    CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED in part** and **DENIED in part** as follows:  Defendants motion is granted as to Plaintiff's FHA and Title VII claims, Plaintiff's only federal claims, and denied as to Plaintiff's state law claims.  Plaintiff's state law claims are **REMANDED** to the Geauga County Common Pleas Court.  Further, Defendants' Motion to Strike Exhibit B and Motion to Strike Exhibit C are **DENIED**.

**IT IS SO ORDERED.**

                                                s/Kathleen M. O'Malley
                                                **KATHLEEN McDONALD O'MALLEY**
                                                **UNITED STATES DISTRICT JUDGE**

**Dated: March 31, 2006**